

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00133-CV

**IN RE L.C.A.S.**, C.L.S., and K.C.C., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01844
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Irene Rios, Justice
                H. Todd McCray, Justice
                Velia J. Meza, Justice

Delivered and Filed: August 20, 2025

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her children, L.C.A.S., C.L.S., and K.C.C.[1]  In her sole issue, Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination was in the children's best interests. We affirm.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the mother as "Mother" and we refer to the children using their initials or collectively as "the children."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  The trial court did not terminate Mother's parental rights to her oldest child, S.B.C.  Instead, the trial court granted Mother possessory conservatorship of S.B.C.  Mother does not challenge the trial court's conservatorship ruling regarding S.B.C., and S.B.C. is not the subject of this appeal.

## BACKGROUND

The Department became involved in the underlying case when someone called the police to report L.C.A.S., a four-year-old child, was in the parking lot of Mother's apartment complex without supervision. When the responding officer arrived, he observed the door to Mother's apartment was open and the children were home alone. The officer arrived at the home at 11:00 AM and the oldest child told the responding officer that Mother had been gone since 10:00 PM the night before. The apartment was in an unsanitary condition and the two youngest children were naked with dirt and food stuck on their bodies.

On December 21, 2023, the Department filed a petition seeking termination of Mother's parental rights. The trial court held a two-day bench trial on December 19, 2024 and January 8, 2025. The trial court heard testimony from Matthew Liska, Christopher Martinez, and Benito Rodriguez, who are all officers with the San Antonio Police Department ("SAPD"); Jennifer Henry, the Department's caseworker; Dolores Mower, Mother's counselor; L.C.A.S.'s father; and Mother.

On February 20, 2025, the trial court signed an order terminating Mother's parental rights to the children. The trial court terminated Mother's parental rights based on statutory grounds (D), (O), and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (O), (P). The trial court also found it was in the children's best interests to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child.

TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a

reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

## BEST INTEREST

In her sole issue, Mother argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

- 4 -

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2] *See id.* § 263.307(b). We also consider the *Holley* factors.[3] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding

---

[2] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

Here, the children came into care when the police responded to a call reporting L.C.A.S. was wondering in the parking lot of Mother's apartment complex unsupervised. Officer Liska testified that he responded to the call around 11:00 AM and the children reported that Mother left at approximately 10:00 PM the night before. According to Officer Liska, the children were dirty and the home was "pretty filthy" and "a total [w]reck." Officer Liska opined the children were being neglected because they were not supervised, the door to the home was not secured, and the bathtub was about to overflow with water. Officer Liska thought the nearly overflowing bathtub was concerning because there were little children in the home without adult supervision. Officer Liska stated Mother's absence placed the children in danger. Mother testified she had left the younger children in the care of her older children so she could go to work. However, she also stated she wasn't supervising the children because she left work to go to a friend's house. Mother also claimed her apartment was clean when she left and the children must have "destroyed the home" while she was gone, but the trial court could have disbelieved Mother. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (explaining a trial court could have disbelieved a parent's testimony, and we defer to the factfinder on witness credibility issues).

Jennifer Henry, the Department's caseworker, testified she saw physical signs of the neglect when she observed the children two weeks after they were removed. For example, L.C.A.S. was missing hair. According to Henry, it looked like L.C.A.S. tried to cut his own hair. K.C.C. had extreme eczema that caused several skin rashes that were starting to open. K.C.C. and C.L.S. had scabies and C.L.S.'s teeth were rotted and visibly black. Mother testified she did not provide C.L.S. with dental care because C.L.S. required a lot of dental work, and Mother could only "focus" on one child's needs at a time. The trial court could have reasonably inferred from this testimony that Mother does not have the ability to meet all the children's physical and medical needs.

Henry stated Mother failed to maintain contact with the Department during the initial investigation. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing the trial court considers the willingness and ability of the parent "to cooperate with and facilitate an appropriate agency's close supervision" and "to effect positive environmental and personal changes within a reasonable period of time" when determining whether parental termination is in the children's best interests). The Department became concerned that Mother was abusing illegal drugs, engaging in criminal activity, and showed patterns of aggression. To address these concerns, Mother was given a service plan that required her to maintain stable housing and financial stability, complete a psychological evaluation and follow all recommendations, engage in and successfully complete individual counseling, take a drug assessment, participate in and complete substance abuse treatment, pass random drug tests, successfully complete a domestic violence course, and refrain from criminal activity. Henry testified she provided Mother with the service plan in early February 2024. Henry personally went over the service plan with Mother, and Mother understood what her

plan required. Although Mother completed several of the services in her plan, she continued to struggle with illegal drug use, aggression, and criminal activity throughout the case.

"Continued illegal drug use by the parent is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *In re J.S.R.*, No. 04-21-00517-CV, 2022 WL 1559107, at *4 (Tex. App.—San Antonio May 18, 2022, pet. denied) (mem. op.) (alterations omitted). "Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future, the emotional and physical danger to the children now and in the future, Mother's parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.). Henry testified Mother's compliance with drug testing was inconsistent. Despite several requests throughout the case, Mother did not take a drug test until October 10, 2024: approximately ten months into the case and only two months before trial. Henry stated Mother failed to take drug tests seven times prior to the October 10, 2024 drug test. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs."). At least one time when Mother told Henry she took a drug test Henry called the lab to confirm and discovered that Mother did not take the drug test Mother claimed to have taken. Henry testified the results of Mother's drug tests were concerning. Mother admitted to marijuana use but was not forthcoming regarding the other drugs that were positive on her drug test. Mother tested positive for cocaine and marijuana on November 15, 2024, approximately a month before trial. *See* TEX. FAM. CODE ANN.

§ 263.307(b)(8) (stating a parent's history of substance abuse is a factor considered by the trial court in determining the children's best interests); *In re K.M.*, No. 04-08-00037-CV, 2008 WL 2923655, at *2 (Tex. App.—San Antonio July 30, 2008, pet. denied) (mem. op.) (holding a parent's illegal substance abuse "places her children in emotional and physical danger"). Mother never gave the Department a valid reason for her positive drug test results.

Mother took the drug assessment, and it was recommended that Mother complete individual and group drug counseling and successfully complete outpatient drug treatment. Henry testified Mother was unsuccessfully discharged from drug treatment in late December 2024 because she missed too many sessions. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A [factfinder] may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [s]he does not have the ability to motivate [her]self to seek out available resources needed now or in the future."). Mother testified that she did not think drug counseling was helpful, though she admitted she "could have been more honest with . . . the counselors" and that she "wasn't completely honest, just due to a lot of frustration with the case . . . ." Mother conceded she used cocaine in August 2024 and admitted she did not complete drug counseling. Henry opined Mother's unaddressed and ongoing drug use could put the children in danger if they were returned to Mother. Henry testified the Department was seeking termination because Mother continued to test positive for drugs and did not engage in drug treatment.

Henry stated the Department was also concerned with Mother's criminal activity while the case was pending. "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re A.L.S.*, 660 S.W.3d 257, 264 (Tex. App.—San Antonio 2022, pet. denied). "Criminal conduct, prior convictions, and

incarceration affect[] a parent's life and [her] ability to parent, thereby subjecting [her] child[ren] to potential emotional and physical danger." *In re J.J.O.*, No. 04-18-00425-CV, 2018 WL 5621881, at \*2 (Tex. App.—San Antonio Oct. 31, 2018, no pet.) (mem. op.). According to Henry, Mother has been charged with three crimes within the three months preceding trial and has a pending charge from March 2024. *See In re R.M.H.*, No. 04-23-00765-CV, 2023 WL 8103188, at \*4 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op.) ("[R]outinely subjecting a child to the probability that [the child] will be left alone because [the child's] parent is in jail endangers the child's physical and emotional well-being."). Mother was charged for assault with a deadly weapon in "March or April" 2024, she was arrested for making a terroristic threat on October 28, 2024, and arrested again for assault on November 10, 2024. *See In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at \*4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.) (mem. op.) (considering a parent's recent arrest as evidence the parent is unable to provide for the child's emotional and physical needs because it indicates instability, including the lack of a stable home). Henry stated Mother's criminal charges are "mostly due to aggression" exhibited by Mother.

Officer Christopher Martinez testified that he responded to an assault in progress in a parking lot in April 2024. Officer Martinez stated Mother scratched her former paramour's neck. Officer Martinez saw the scratches and opined they were consistent with the report from the paramour that Mother scratched him. Although three people were injured in this altercation, Mother was not arrested.

In a separate incident, Officer Benito Rodriguez testified he made contact with Mother on November 10, 2024. Mother's former paramour wanted to gather his belongings from inside Mother's apartment. When Officer Rodriguez and the paramour were walking up the stairs towards the apartment, Mother threw a painting and struck the paramour. Officer Rodriguez

witnessed the assault and arrested Mother. Officer Rodriguez also testified he suspected Mother was under the influence because she had slurred speech and smelled like alcohol.

When Mother was asked about each of these pending criminal charges, Mother invoked her Fifth Amendment right against self-incrimination. The trial court warned Mother that it was permitted to draw whatever inferences it wished from Mother's invocation of her Fifth Amendment right. *See In re A.R.P.*, No. 04-23-00668-CV, 2024 WL 251957, at *2 (Tex. App.—San Antonio Jan. 24, 2024, no pet.) (mem. op.) (holding the factfinder is free to draw a negative inference when a parent invokes his Fifth Amendment right against self-incrimination to specific questions); *In re G.V.S.*, No. 04-18-00563-CV, 2018 WL 6624398, at *3 (Tex. App.—San Antonio Dec. 19, 2018, pet. denied) (mem. op.) ("The Fifth Amendment . . . does not forbid adverse inferences against witnesses in civil actions [and] the trial court, as the fact finder, was free to draw negative inferences regarding Father's criminal history based on his refusal to answer questions relating to those issues."); *see also In re D.J.R.*, No. 04-23-00568-CV, 2023 WL 8246666, at *5 (Tex. App.—San Antonio Nov. 29, 2023, no pet.) (mem. op.) ("Although parental rights are constitutional in nature, a termination proceeding is a civil proceeding for purposes of the privilege against self-incrimination.").

Although Mother completed a domestic violence course, Henry testified she is concerned whether Mother has been able to successfully implement what she learned because she has not shown a change in her behavior after completing the course. Henry stated she is concerned with Mother's pattern of aggression because it "expos[es] the [children] to violent patterns in the home." *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (providing the trial court should consider whether there is a history of assaultive conduct by the parent when making a best-interest determination); *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[E]ndangering conduct is not limited to actions

directed towards the child."). According to Henry, the children have already learned some of these violent behaviors from Mother.

Based on Mother's continued illegal substance abuse and pattern of aggression, Henry believes the reasons for removal have not been addressed. Thus, Henry opined Mother's drug use and aggressive behavior continue to pose a danger to the children.

Henry stated, in addition to services that would address Mother's substance abuse and aggressive behavior, counseling was a crucial service for Mother to successfully complete to address her neglect of the children. The trial court also heard disputed testimony on whether Mother successfully engaged in counseling. For example, Henry testified Mother started counseling but has not successfully completed it. According to Henry, Mother consistently attended counseling sessions in November 2024, but was inconsistent in her attendance every other month. Dolores Mower, Mother's counselor, testified however that Mother missed some counseling sessions but "did fairly well" with her attendance. Mower testified Mother began counseling in June 2024 and successfully completed counseling in November 2024, but was required to reengage in December 2024. Mower also testified that Mother denied recent drug use despite two drug tests showing Mother was positive for drugs in October and November 2024. Both Henry and Mower agreed that Mother has not been transparent in her counseling sessions. The trial court could have considered Mother's lack of transparency as an indication that she was not willing to engage in counseling in good faith, especially considering Mother denied drug use despite drug tests showing otherwise. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (listing a parent's willingness "to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision" as a best interest fact considered by the trial court). Henry opined Mother's lack of transparency has delayed her progress in counseling.

L.C.A.S., who was seven years old at the time of trial, is placed with his paternal grandparents. Although L.C.A.S. had behavioral issues in his three prior placements, Henry testified L.C.A.S. is "doing really great" with his paternal grandparents. According to Henry, L.C.A.S. has "made a ton of progress in this home [and] he's very connected to family and has done well with learning the rules and the structure within the home." L.C.A.S. is diagnosed with unspecified trauma and stressor related disorder, disruptive mood, dysregulation disorder, a developmental disorder of scholastic skills, child neglect or abandonment, and ADHD. Henry stated that therapy and his paternal grandparents' communication skills have significantly helped L.C.A.S. with his issues. She also testified that his paternal grandparents have kept up with his medical appointments and L.C.A.S. consistently attends school. The Department's goal for L.C.A.S. is adoption by his paternal grandparents, and they are nearly done with the licensing process.

C.L.S., who was five years old at the time of trial, has been in her current placement since November 2024. Henry stated C.L.S. still struggles with behavioral issues and is diagnosed with unspecified trauma, stressor related disorder, neglect, disruptive mood, dysregulation disorder, and ADHD. C.L.S. struggles to regulate her emotions and has explosive behaviors when she is upset. Although she had previously been in four other placements, Henry testified C.L.S. is doing well in her current placement because the structure and services set up in the home have helped her improve. Henry also stated that C.L.S.'s medical needs have been addressed. C.L.S.'s current foster parents are "undecided" on whether they will be a long-term placement for C.L.S. because she has only been placed with them recently, and it is still too soon for the foster parents to make a decision on adoption.

K.C.C., who was three years old at the time of trial, is placed in a different foster home. K.C.C. has been with her current placement since September 2024. Henry testified K.C.C. is "doing really well" in her current placement and is bonded with her caregiver. K.C.C.'s eczema has cleared up substantially since she first came into the Department's care. The Department's permanency goal for K.C.C. is unrelated adoption. Her current placement is not willing to adopt her but has agreed to remain the placement until an adoptive family is located, and there are some people within the community that are interested in adopting K.C.C.

Although Mother did engage and complete some of her services, the trial court could have determined Mother's ongoing drug abuse and patterns of aggressive behavior would continue to pose a danger to the children. Henry opined the most important services for Mother to complete were full and honest engagement in therapy, drug treatment, and compliance with drug testing. The trial court could have also considered that Mother has had four prior cases involving the Department and that Mother's failure to be open and transparent during her counseling sessions indicates she has not addressed the neglectful behavior she exhibited towards her children. Henry expressed concern that Mother continues to use drugs, there is violence in the home, that Mother will not be able to support the children, and she has not demonstrated that she can provide a safe, stable environment for the children. When asked whether she has done everything she needed to be reunified with her children, Mother responded: "Honestly, I don't think that I've done everything that I was supposed to do, no. I . . . could have been a little more focused [and] made better choices, so no, ma'am." Although, the lack of permanency for the two younger children is concerning, the trial court could have reasonably concluded that reunification with Mother would not be in the children's best interests under a clear and convincing burden of proof.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interests. *See id.* § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

Accordingly, Mother's sole issue is overruled.

**CONCLUSION**

We affirm the trial court's order terminating Mother's parental rights to the children.

Irene Rios, Justice